J-A25029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| D.C.S.-R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| P.R. | |
| Appellant | No. 790 EDA 2014 |

Appeal from the Order of February 18, 2014
In the Court of Common Pleas of Wayne County
Domestic Relations at No.: 398 DR 2011

BEFORE:  DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:           **FILED NOVEMBER 07, 2014**

P.R. ("Father"), *pro se*, appeals the February 18, 2014 order that granted D.C.S.-R ("Mother") primary physical custody of their son, J.P.R. ("Child"), who was born in February of 2009.  The order also granted shared legal custody and established a schedule of partial physical custody for Father.

The record supports the following recitation of the history of this case. The parties married on October 2, 2004 in New Jersey.  On August 8, 2011, Mother filed for divorce.  At the time of filing, Mother lived in Wayne County and Father lived in Bucks County.  Mother has three children from a prior marriage.  On September 1, 2011, Mother filed a custody complaint.

---

[*]     Retired Senior Judge assigned to the Superior Court.

On September 20, 2011, Mother obtained a protection from abuse ("PFA") order against Father that provided Father with custody of Child every other weekend. On November 14, 2011, the court entered an interim custody agreement that provided for the same custody as outlined in the PFA. On January 17, 2012, the court entered another interim custody agreement that outlined the same custodial time.

On March 16, 2012, a court-appointed master began a custody hearing. Hearings continued sporadically until June 21, 2012. On June 29, 2012, the master issued his report. On July 31, 2012, the court entered a custody order adopting that report and providing for joint legal custody, shared physical custody during the summer of 2012, whereafter custody reverted to the every other weekend schedule that had previously been in effect.

Much of the custody litigation has stemmed from Child's special needs. The parties disagreed about what services Child needs and who should provide those services. The Early Intervention Program in Wayne County evaluated Child in 2011 and identified a feeding/eating issue, with an underlying sensory-processing component. The program established an Individualized Education Plan ("IEP") for him and implemented appropriate services. Child has received occupational therapy relating to his eating issues in Wayne County. In addition, Child has received bi-monthly treatment from psychologist Wendy Matthews, Ph.D. Father takes Child to these sessions because Dr. Matthews' office is close to his home. At some

point, the parties agreed to modify custody to extend Father's custody through Sunday night so that Child could attend these Monday sessions with Dr. Matthews. Although Child was evaluated at Children's Hospital of Philadelphia and was put on a waiting list for its Day Feeding Program, Child was not enrolled the Program because Mother and Father disagreed about the program. With the exception of Dr. Matthews, Child's current treatment providers are located in the Wayne County area.

The parties divorced on July 19, 2013. On September 23, 2013, Father commenced the current phase of this litigation when he filed a petition to modify custody and for relocation.[1] The trial court held hearings on Father's petition on December 10, 2013, and January 24, 2014.

When Father filed his petition, per the standing custody order, Mother had primary physical custody and Father had periods of partial physical custody on alternate weekends from Friday to Sunday. By the parties' agreement, Father also had custody of Child on alternate Mondays so that Child could attend therapy sessions with Dr. Matthews. When the hearings occurred, Mother had been living with her parents for approximately one year. Mother's boyfriend also lived with Mother, Child, and her parents. Father had lived in Bucks County for at least three years. The parties'

---

[1]   While Father titled his petition as one for relocation, Father actually sought a change in primary custody.

homes are approximately three hours apart, and both are appropriate residences for Child.

Father's closest relative, a sister, lives in New York City and travels to Bucks County to visit Father and Child. Father lives near many of Mother's relatives, but does not have regular contact with them. Child's maternal grandparents assist Mother in caring for Child. Mother's three children from her prior marriage reside primarily in New Jersey with their father. Mother and Child make the six-hour round trip to New Jersey to visit with Mother's other children at least once per month.

The trial court found that Child had "made a lot of progress" with the services he receives, and found that both Mother and Father are actively involved in Child's care. Trial Court Order and Opinion ("T.C.O."), 2/18/2014, at 3. Child attends a pre-kindergarten program in Wayne County from 12:30 p.m. until 3:30 p.m., Tuesdays through Fridays. Child also attends the Philadelphia Christian Center Academy every other Monday when he is with Father. On February 18, 2014, the trial court issued an opinion and order providing for shared legal custody, primary physical custody with Mother, and every other weekend partial custody with Father.

On March 11, 2014, Father filed his notice of appeal. He filed his statement of matters complained of on appeal on March 27, 2014.[2] On April

_____

[2] Pa.R.A.P. 1925(a) requires that, in Children's Fast Track appeals such as this one, the concise statement of errors complained of on appeal shall be
*(Footnote Continued Next Page)*

25, 2014, the trial court filed a statement pursuant to Pa.R.A.P. 1925(a) adopting its February 18, 2014 opinion.

Father presents the following questions for our review:

I. Did the trial court err and/or abuse its discretion in relying on and/or in applying the relocation factors of 23 Pa.C.S.A. § 5337(h) to the instant matter, where the parties have resided in two separate counties within this Commonwealth and this Court's jurisdiction for several years prior to the custody hearing, and where they had been exercising their custodial time in their respective residences during that time?

II. Did the trial court err and/or abuse its discretion in finding factor one of 23 Pa.C.S.A. § 5337(h) neutral as to its application to either Mother or Father, rather than in favor of Father, or in finding factor two of 23 Pa.C.S.A. § 5337(h) in favor of Mother, where said determination was contrary to the determination made in factor ten of 23 Pa.C.S.A. § 5328(a)?

III. Did the trial court err and/or abuse its discretion in failing to give proper weight to factor 7 of 23 Pa.C.S.A. § 5337(h)?

IV. Did the trial court err and/or abuse its discretion in finding as part of factor 10 of 23 Pa.C.S.A. § 5337(h) and/or in concluding, drawing an inference or deduction that a "change" in [Child's] "routine" may hinder or be detrimental to his progress?

V. Did the trial Court err and/or abuse its discretion in determining that factor 4 of 23 Pa.C.S.A. § 5328(a) and factor 5 of 23 Pa.C.S.A. § 5328(a) favor [M]other, where the testimonial and documentary evidence shows otherwise?

VI. Did the trial court err and/or abuse its discretion in determining that factor one, factor three or factor six of 23 Pa.C.S.A. § 5328 (a) are neutral as to their application to either

_(Footnote Continued)_ ───────────────

filed and served with the notice of appeal. Father did not do so. However, we have accepted Father's late filing because Mother did not object or claim any prejudice resulted from it. **_See In re K.T.E.L._**, 983 A.2d 745, 748 (Pa. Super. 2009).

Mother or Father, rather than in favor of [F]ather, or in not considering factor 11 of 23 Pa.C.S.A. § 5328(a)?

VII. Did the trial court err and/or abuse its discretion in determining that factor 12 of 23 Pa.C.S.A. § 5328(a) favors Mother, and that factor 13 of 23 Pa.C.S.A. § 5328(a) is neutral, rather than in favor of [F]ather?

VIII. Did the trial court err and/or abuse its discretion in not considering factor 14 of 23 Pa.C.S.A. § 5328(a) and/or in not drawing a negative inference against Mother, where Mother failed to disclose that her paramour was a member of her household when she filed her December 2, 2013 pre-trial statement and submitted her Criminal Verification and Abuse Affidavit around the same time?

IX. Did the trial court err and/or abuse its discretion in determining that factor 9, 10 or 15 of 23 Pa.C.S.A. § 5328(a) are neutral as to their application to either Mother or Father, rather than in favor of Father?

X. Did the trial court err and/or abuse its discretion in failing to consider, address or make a finding, conclusion, draw an inferences [*sic*] or deductions on whether the events that have transpired since the entry of the July 31, 2012, custody order constitute a significant change in circumstances?

XI. Did the trial court err and/or abuse its discretion in failing to address, make a finding, conclusion or draw an inference or deduction on whether Mother unilaterally relocated from the marital home in New Jersey to Wayne County, PA on or about June of 2011, or if this intestate [*sic*] move was done to evade the relocation, custody and jurisdictional laws of the State of New Jersey, and how this bears on Mother's fitness to be awarded custody of [Child]?

XII. Did the trial court err and/or abuse its discretion in the visitation section of the order, by eliminating all of Father's Holidays, Fall and Spring vacations to which Father was entitled to under the prior custody order or by depriving Father of a fair and reasonable summer schedule- at least 50-50 shared time?

Father's Brief at 2-5 (citations modified).

Our scope and standard of review are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012).

> We have stated:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006). Additionally,

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting *Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994)).

"Upon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To determine the child's best interests, the trial court must consider the following factors:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In his first issue, Father claims that the trial court erred in considering the relocation factors enumerated in 23 Pa.C.S.A. § 5337(h) in addition to the best interests factors in section 5328. Father contends that, because neither parties intended to relocate, this was not a relocation case. Father asserts that it was, therefore, error for the court to consider the relocation factors. Father's Brief at 34-35.

This Court recently addressed the applicability of the section 5337 custody factors when custody of a child changes from one parent to another and the parties live a significant distance from each other, but neither parent relocates. In *D.K. v. S.P.K.*, ___ A.3d ___, 2014 WL 4923111 (Pa. Super. Oct. 2, 2014), we held as follows:

- 9 -

[W]e hold that a custody case where neither parent is seeking to relocate and only the children would be moving to a significantly distant location if custody shifted from one parent to another does not *per se* trigger section 5337 of the Child Custody Act. Thus, the notice requirement of section 5337(c) does not apply in such cases. Trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interest analysis. As we have explained, several of the relevant factors of section 5337(h) are encompassed, directly or implicitly, by the custody factors listed in section 5328(a). Any relevant section 5337(h) factor that is not expressly encompassed in section 5328(a) should be considered by the trial court under the catchall provision of section 5328(a)(16).

*Id.* at 10. Thus, where a petitioner asks a trial court to change custody of a child from one parent to another who lives a significant distance away, the trial court needs to consider only those relocation factors that might be relevant to its deliberations, and only as a "relevant factor" under subsection 5328(a)(16).

Even though this Court decided *D.K.* after the trial court issued its opinion in this case, we cannot fault the trial court for considering the relocation factors here because Father was the party who raised the issue in his petition for modification. In addition to titling it a petition to relocate, Father specifically pled that he was seeking relocation of Child.

The trial court discussed the relocation factors in detail in addition to the section 5328 factors. While, pursuant to *D.K.*, the trial court was not required specifically to consider those relocation factors that were not relevant to this case, we find no error in the trial court's discussion of all of the section 5337 custody factors in detail. Father's first claim of error is without merit.

Father's second through ninth issues challenge, in one way or another, the trial court's consideration or weighing of various factors. Specifically, Father takes issue with the court's consideration of the factors at section 5337(h)(1), (2), (7), and (10), and section 5328(a)(1), (3), (4), (5), (6), (9), (10), (11), (12), (13), (14), and (15). Father's Brief at 36-60.

First, Father believes the trial court was inconsistent in its discussion of section 5337(h)(2) and section 5328(a)(10). In considering relocation factor two, a trial court must assess:

> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

23 Pa.C.S.A. § 5337(h)(2). In considering custody factor ten, a trial court must assess:

> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

23 Pa.C.S.A. § 5328(a)(10).

According to Father, these two factors require "consideration of the same identical issues. 'Which party is more likely to attend to the daily **physical, emotional**, developmental, **educational** and **special needs** of the child'." Father's Brief at 37 (emphasis in original). While the provisions are similar, section 5328(a)(10) focuses upon the Child while section 5337(h)(2) focuses upon the effect of relocation upon the Child.

Here, the trial court found that both parents are capable of meeting Child's needs under custody factor ten, but that relocation factor two favors Mother because of the services Child receives from his current treatment team in Wayne County and the possibility that he may need them in the future. The record supports these findings and we find no abuse of the court's discretion in assessing these factors.

With regard to his other challenges to the factors, Father merely asks us to review the evidence presented and weigh it differently than the trial court. That we may not do. The trial court is the sole arbiter of the weight assigned to evidence and the sole arbiter of the credibility of witnesses. *Ketterer*, *supra*; *S.M.*, *supra* ("The parties cannot dictate the amount of weight the trial court places on evidence."). Although the trial court considered other factors, the trial court primarily relied upon Mother's role as primary caretaker and the involvement of Wayne County services in treating Child's special needs. The record supports these findings. The court need not discuss every fact that went into its decision to satisfy the statutory requirements. That the trial court did not mention all of the facts Father finds important does not mean that the trial court did not consider those facts. Ultimately, our task is to determine whether the record supports the trial court's decision. Here it does, and we find no abuse of discretion.

In his tenth issue, Father asserts that the trial court erred in failing to find that there had been a significant change in circumstances since the entry of July 31, 2012 custody order. Father's Brief at 60-61. While at one

time our case law provided that a party must show a change in circumstances before a court could modify custody, **see Agati v. Agati**, 492 A.2d 427, 432 (Pa. Super. 1985), our Supreme Court since has held otherwise. **See Karis v. Karis**, 544 A.2d 1328, 1332 (Pa. 1988) ("[W]e hold that a petition for modification of a partial custody to shared custody order requires the court to inquire into the best interest of the child regardless of whether a 'substantial' change in circumstances has been shown."). Therefore, the trial court was not required to make a finding that circumstances had changed in order to modify the custody order, if doing so was in Child's best interests. The trial court considered the appropriate best interests factors and based its decision upon its review. This issue lacks merit.

Father next contends that the trial court erred in failing to find that Mother's move from New Jersey to Pennsylvania was done in bad faith. Father's Brief at 62-63. Mother moved before she filed her original custody complaint in August 2011. Since the move, the parties have had multiple custody proceedings. Father provides no compelling reason that the move is relevant to a custody determination in 2014. Therefore, we find no error in the trial court's failure to make this specific finding.

Finally, Father asserts that the trial court erred because it did not include a specific schedule for holidays in the custody order. Father's Brief at 64-65. We have held that "[t]he matter of scheduling . . . is best left to the discretion of the trial court." **Schwarcz v. Schwarcz**, 548 A.2d 556,

571 (Pa. Super. 1988). While a holiday schedule could have been included in the order, the trial court's task was to determine a schedule that reflects Child's best interests. As stated above, the trial court considered the required factors and the record supports its determination of Child's best interests. Because that schedule does not conform to Father's preferences or expectations does not mean that the trial court erred.

Our review reveals that the record in this matter supports the trial court's findings and conclusions of law. Thus, the trial court did not abuse its discretion. Accordingly, we affirm the February 18, 2014 order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2014